425 So.2d 115 (1982)
FAIR-WAY RESTAURANT and Aetna Insurance Company, Appellants,
v.
Harold D. FAIR, Appellee.
No. AL-177.
District Court of Appeal of Florida, First District.
December 28, 1982.
Rehearing Denied February 3, 1983.
Mark E. Hungate of Fowler, White, Gillen, Boggs, Vilareal & Banker, St. Petersburg, for appellants.
*116 William D. Douglas of Hamilton & Douglas, Tampa, for appellee.
BOOTH, Judge.
This cause is before us on appeal from an order of the deputy commissioner in a workers' compensation proceeding awarding temporary total disability benefits. Also at issue is the deputy's inclusion of the value of meals provided claimant's children in the calculation of the average weekly wage and his finding that claimant is permanently totally disabled (PTD), notwithstanding the employer/carrier's stipulation to that fact before the hearing. We affirm in part and reverse in part.
On December 2, 1975, claimant Harold Fair fell at his restaurant, injuring his knee. Prior to the accident, he and his wife had operated the restaurant, claimant receiving $175 a week, his wife receiving no wages. Most of the meals for the family, which included six children, were provided by the restaurant. We affirm the deputy's inclusion of the value of meals provided claimant's children in his calculation of the average weekly wage, upon which benefits were based. See, Jess Parrish Memorial Hospital v. Ansell, 390 So.2d 1201 (Fla. 1st DCA 1980). Any benefit which helps an employee meet his personal expenses should be included in the calculation of average weekly wage. Layne Atlantic Company v. Scott, 415 So.2d 837 (Fla. 1st DCA 1982). The ultimate test for determining whether a fringe benefit, such as meals, must be included is whether the employee receives a tangible benefit of a real, present-day value. State of Florida, Department of Health and Rehabilitative Services v. Ryan, 381 So.2d 269 (Fla. 1st DCA 1980). This court has held that the value of included meals must be based on their fair market value, determined in accordance with Internal Revenue Service regulations. Rhaney v. Dobbs House, Inc., 415 So.2d 1277 (Fla. 1st DCA 1982).
The employer/carrier accepted claimant as PTD before the hearing and claims on appeal that this stipulation precluded the deputy commissioner from adjudicating claimant as PTD. Although this court's opinion in Sperry Remington Office Machines v. Stelling, 383 So.2d 1150 (Fla. 1st DCA 1980), indicates that it is at least a "technical error" for the deputy commissioner to adjudicate claimant PTD where the employer/carrier has accepted him as PTD before the hearing, the language of the Florida Supreme Court in Andrews v. Strecker Body Builders, 92 So.2d 521 (Fla. 1957), seems to imply that such stipulations by the employer/carrier do not deprive the deputy of jurisdiction, but that the inclusion in his order of such matters is within the discretion of the deputy. We therefore affirm the deputy commissioner's adjudication of claimant as PTD.
Soon after claimant's accident, his restaurant burned down. Claimant underwent two operations to remove torn medial meniscus from his knee and returned to work at his regular salary when a new restaurant was opened a year later in December, 1976. He continued to have problems with his knee. In October, 1977, Dr. Jones, a physician to whom claimant was referred, performed an arthrogram which was "non-diagnostic" and encouraged claimant to return to normal activities. In December, 1977, claimant's wife "fired" him from his employment in the restaurant due to his inability to perform the work. Thereafter, claimant remained unemployed and, in February, 1979, filed a claim for temporary total disability benefits from the date of the accident.
In April, 1980, claimant's attorney arranged for him to see Dr. Baker, who performed surgery to remove retained medial meniscus and declared claimant to have reached maximum medical improvement on October 10, 1980, with a 40 percent disability. Benefits were paid from July 6, 1980 to December 4, 1980, at which time the employer/carrier ceased payments because of a social security off-set. The deputy commissioner awarded claimant temporary total disability benefits from the date of the accident through November 30, 1976, and from January 1, 1978 through October 10, 1980, with credit for compensation paid during that period.
*117 We find that the deputy's award of temporary total disability benefits for the period from January 1, 1978 to July 5, 1980 was in error since it was based upon claimant's testimony of pain and inability to work, without a work search or medical evidence that claimant was in fact totally disabled. In Ken Lones Landscaping v. Tucker, 395 So.2d 272, 274 (Fla. 1st DCA 1981), this court defined temporary total disability as "a period during which a claimant is totally incapacitated due to a compensable injury," noting that there is no automatic entitlement to temporary total disability benefits until maximum medical improvement is reached, but that the ability to return to work, as opposed to the actual securing of employment, marks the termination of temporary total disability. In order to be entitled to temporary total disability benefits, the burden is on the claimant to show lack of capacity to work. A claimant who fails to produce medical evidence that he was unable to work and who does not test his ability to work by an adequate work search has failed to meet this burden. McKenney v. School Board of Palm Beach County, 408 So.2d 655 (Fla. 1st DCA 1981). While, in proper circumstances, temporary medical or functional disability may be proven by lay testimony, Square G. Construction Company v. Grace, 412 So.2d 397 (Fla. 1st DCA 1982), the case at issue does not come within the parameters of that rule.
Square G. Construction Company v. Grace, supra, involved an award of six-weeks temporary partial disability benefits based solely upon claimant's testimony at the hearing that his medication made him drowsy and would prevent him from operating the heavy equipment used in his pre-accident job. The court noted that the work-search requirements of Exxon Company U.S.A. v. Alexis, 370 So.2d 1128 (Fla. 1978), requiring good faith in testing work capability after medical release, is subject to qualification with respect to short periods or particular circumstances, including a claimant's testimony as to physical symptoms involving ordinary evidentiary credibility standards.[1]
At issue here is a two and one-half year period. None of the medical testimony supported claimant's assertion that he was totally unable to work during that period of time; in fact, Dr. Jones encouraged him in 1978 to return to normal activity. For more than two years after seeing Dr. Jones, claimant did not seek medical treatment, nor did he make a good-faith attempt to return to work. His employment at the restaurant for one full year after the accident disproves his claim that he was totally unable to work. Since claimant has not met his burden of showing total inability to work during the period from January 1, 1978 through July 5, 1980, the deputy's award of temporary total disability benefits for that period is in error.
We affirm the deputy's finding of permanent total disability and his inclusion of the value of meals provided claimant's children in his calculation of the average weekly wage, but reverse the award of temporary total disability benefits for the period from January 1, 1978 through July 5, 1980 and remand for further proceedings consistent herewith. See, Duro Paperbag Manufacturing Company v. Graham, 415 So.2d 809 (Fla. 1st DCA 1982), and State of Florida, Sunland Center v. Campbell, 417 So.2d 1156 (Fla. 1st DCA 1982).
McCORD and WENTWORTH, JJ., concur.
NOTES
[1] In Square G. Construction Company v. Grace, 412 So.2d 397 (Fla. 1st DCA 1982), the court distinguished: Commercial Carrier Corporation v. Bennett, 396 So.2d 847 (Fla. 1st DCA 1981), in which a claimant's bare complaints were dismissed as insufficient to excuse lack of work effort, by the fact that it involved a six-month period after the claimant's release for work, without evidence that he had sought either further medical attention or a return to employment; Cardinal Industries, Inc. v. Dawkins, 392 So.2d 368 (Fla. 1st DCA 1981), by the fact that there the claimant failed to follow recommendations by three treating physicians that he should attempt to return to work; Walter Glades Condominium v. Morris, 393 So.2d 664 (Fla. 1st DCA 1981), by the fact that it involved an 18-month period after discharge, without evidence of any effort by the claimant to seek employment or medical attention during that period.