ERVIN, Judge,
dissenting.
I would affirm the order of the judge of compensation claims in its entirety. In so concluding, I agree with the majority that the judge should not have offset the wage loss claimed, because case law is clear that the deemed earnings provision of the statute is inapplicable under such circumstances. I agree also that the judge should have explicitly ruled on the employer’s defense regarding voluntary limitation of income. In consideration of the somewhat unusual circumstances of this case, however, I would not remand the case for further findings.
Because the judge applied deemed earnings based upon, as he stated, claimant’s “inability to do a job search,” he may have implicitly rejected the employer’s defense of voluntary limitation of income for the reason that the employer failed to inform claimant of her responsibility to conduct a work search. If this was the tenor of his order, the order should be affirmed for the reasons stated infra. If, however, he found instead that claimant was informed of such duty, but failed to so act because of her continuing treatment for an unrelated medical condition, I still would not remand for further proceedings in that I am satisfied there is no competent, substantial evidence to support such a finding. Thus, under either theory the order should be affirmed.
In situations in which the evidence does not disclose that an employee was notified of the responsibility to perform a work search, this court has recognized in substantial case law that it is immaterial whether the wage loss claimed was the result of the compensable injury, and that a worker is entitled to full disability benefits without regard to the employee’s capability for work vel non during the period for which benefits are sought. For example, an employee may have an unimpaired ability to work, but if he or she is never released to return to work by the attending physician or advised to conduct a work search by the employer, the causal connection between the compensable injury and *174 the wage loss claimed remains intact. Under those circumstances, the employee should be paid benefits in full for the period of time during which he or she was not on notice of the obligation to return to work or otherwise given the opportunity to test his or her capacity to work in the labor market.
In Mackin v. Olde World Cheese Shop, 536 So.2d 301 (Pla. 1st DCA1988), this court held that if an employer/carrier does not notify the claimant of the work search obligation, the claimant is entitled to full compensation benefits, and the deemed earnings offset is inapplicable. Our deci-sional law also recognizes that Chapter 440, Florida Statutes, places reciprocal obligations upon the employer and the employee: Section 440.185(2)(e), Florida Statutes (1983), provides that it is the duty of an employer to explain to the injured worker his or her rights, benefits, and obligations under the Workers’ Compensation Law, including his or her responsibility to establish that any wage loss claimed is the result of the compensable injury, and Section 440.-15(3)(b)(2), Florida Statutes (1983), provides that it is the obligation of the employee to satisfy such burden. Thus, our decisions have consistently confirmed the requirement that the employer initially advise the employee who suffers a work-related injury of his or her obligation to carry out a work search, making a job search irrelevant in circumstances in which the employer did not comply with its duty to inform, regardless of whether the wage loss was the result of the compensable injury or whether the employee’s post-termination activities were inconsistent with any alleged incapacity to work. See, e.g., Saavedra v. Cedars Medical Ctr., 584 So.2d 197 (Fla. 1st DCA1991); Dyer v. Lakeland Health Care Ctr., 582 So.2d 760 (Fla. 1st DCA1991); Stanley v. Okeelanta Corp., 575 So.2d 734 (Fla. 1st DCA1991); Pan Am. World Airways v. Mash, 573 So.2d 383 (Fla. 1st DCA1991); Scott v. Container Corp. of Am., 559 So.2d 399 (Fla. 1st DCA 1990); Parker v. Eaton Corp., 554 So.2d 644 (Fla. 1st DCA1989); Coleman v. Champion Int’l Inc., 552 So.2d 1196 (Fla. 1st DCA1989); Mackin v. Olde World Cheese Shop, 536 So.2d 301 (Fla. 1st DCA1988); Rios v. Fred Teitelbaum Constr., 522 So.2d 1015 (Fla. 1st DCA1988); Coq v. Fuchs Baking Co., 507 So.2d 138 (Fla. 1st DCA1987); Morris v. Metal Indus., 491 So.2d 312 (Fla. 1st DCA1986); DeFrees v. Colt & DuMont/Hit Sales, 483 So.2d 848 (Fla. 1st DCA1986).
The award of disability benefits to the worker under such circumstances appears to be more in the nature of a sanction against the employer, resulting from the violation of its statutory duty to inform, rather than from the claimant’s satisfaction of his or her burden to show that the benefits claimed were the result of the injury, on the theory that the employer’s failure to inform “effectively deterred ... [the claimant from] establishing entitlement to disability benefits.” Parker, 554 So.2d at 647. Thus, in the case at bar, if the employer’s violation of its statutory obligation to inform effectively deterred the claimant from establishing her entitlement to disability benefits, the claimant clearly could not satisfy her burden of showing a causal connection between the compensable injury and the benefits requested, and she is entitled to payment of full disability benefits during the time she was unaware of her obligation.
Claimant testified that she was neither released to return to work by her attending physician nor advised by her employer to perform a work search. Her testimony was corroborated by her physician who admitted he had no record of advising claimant to return to work. Claimant did admit that she had received a letter from the City of Miami dated July 29,1987, informing her that if she lost wages as a result of her compensable injury, she was required to file a request for wage loss benefits. Although forms for such benefits were enclosed with the letter, work search forms were not.[3] Michael L. Misler, claims specialist with the City of Miami and the au *175 thor of the letter, testified that while it was the City’s routine policy to enclose work search forms with such letters, he had no independent recollection regarding whether such forms were in fact enclosed with the particular letter in this case.
In response to claimant’s assertions regarding lack of notice, the City, in addition to relying on the letter dated July 29, 1987, refers also to a copy of an interoffice memorandum sent to the police personnel department which advised that the claimant was able to return to limited duty as of August 2, 1987. The City does not state in its brief, however, that this memo was ever forwarded to claimant. Thus, the evidence fails to disclose that claimant was ever advised to return to work or to conduct a job search.
Given the status of the record before us, it would be entirely speculative to say that claimant would have been either unable or unwilling to return to work on full- or light-duty status while she was undergoing treatment for an unrelated medical condition. Under the circumstances, remand for the purpose of determining “whether,” in the majority’s words, “any wage loss incurred was the result of the compensable injury” is in my judgment an unnecessary judicial exercise. The judge should have awarded full disability benefits without any offset, due to the employer’s failure to advise claimant of her responsibility to return to work or to conduct a job search. If any error was committed by the judge, it was in the employer’s favor by awarding claimant only deemed earnings at minimum wage for the period of time at issue. Because claimant, however, did not cross-appeal the error committed, I would affirm the order in its entirety.

. Indeed, the letter itself, included in the record as claimant’s exhibit number five, makes no reference whatsoever to work search forms or to claimant’s responsibility to conduct a search.